UNITED STATES DEPARTMENT OF the AIR FORCE, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 90–1530.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1991.

Decided Dec. 27, 1991.

Rehearing and Rehearing En Banc Denied Feb. 26, 1992.

Edward T. Swaine, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Dept. of Justice, and Mark B. Stern, Atty., Dept. of Justice, were on the brief for petitioner. Robert V. Zenner, Atty., Dept. of Justice, also entered an appearance for petitioner.

Jill A. Griffin, Atty., Federal Labor Relations Authority, with whom William E. Persina, Sol., Federal Labor Relations Authority, and William R. Tobey, Deputy Sol., Federal Labor Relations Authority, were on the brief for respondent.

Before WALD, D.H. GINSBURG and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

Dissenting opinion filed by Circuit Judge RANDOLPH.

WALD, Circuit Judge:

The United States Department of the Air Force ("Air Force") petitions for review of a decision and order of the Federal Labor Relations Authority ("Authority" or "FLRA") requiring the Air Force to engage in collective bargaining over a proposal advanced by the American Federation of Government Employees, Local 987 ("union"). The proposal calls for overtime compensation for the time employees are delayed in leaving the worksite because of security measures. The Authority has

cross-petitioned for enforcement of its order. Because we disagree with the Authority's interpretation of a government-wide regulation promulgated by the Office of Personnel Management ("OPM"), and further find that the proposal is inconsistent with that regulation, we hold that the proposal is nonnegotiable.

## I. BACKGROUND

### A. *Legal Framework*

The Federal Service Labor–Management Relations Statute ("FSLMRS"), 5 U.S.C. §§ 7101–7135 (1988), imposes upon both the Air Force and the union a general obligation to negotiate in good faith over the conditions of employment of represented employees. 5 U.S.C. §§ 7114, 7117. The FSLMRS also limits the scope of that duty, however: a federal agency may not negotiate over proposed conditions of employment that are "inconsistent with any Federal law or any Government-wide rule or regulation." 5 U.S.C. § 7117(a)(1).

The FSLMRS is a part of the Civil Service Reform Act of 1978, as amended, 5 U.S.C. §§ 1101–9101 (1988), in which Congress designated the OPM as the lead personnel agency for civilian employees in the executive branch. Congress charged the OPM with authority to issue government-wide regulations concerning federal employees under that Act. *See* 5 U.S.C. §§ 1103–04, 1301–02; S.Rep. No. 969, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2727–28. The OPM has also been granted the broad authority to engage in substantive (or "legislative") rulemaking concerning the application of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 204(f), and the Federal Employees Pay Act ("FEPA"), 5 U.S.C. § 5548, to federal employees. *See* *AFGE v. OPM*, 821 F.2d 761 (D.C.Cir.1987). In general, the OPM regulations under the

FLSA define the minimal entitlement of federal employees to premium or overtime pay while the FEPA sets absolute standards for computing their pay. One of the OPM regulations, 5 C.F.R. § 551.513, provides that if an employee is covered by both Acts, the employee will be paid the greater amount if the regulations under one of the Acts would provide a greater benefit than those under the other.[1]

In the Part 551 regulations promulgated under the FLSA, the OPM addressed among other things activities performed at the conclusion of the workday. The regulations provide in relevant part:

A ... concluding activity that is not closely related to the performance of [an employee's] principal activities is considered a ... postliminary activity. Time spent in ... postliminary activities is excluded from hours of work and is not compensable, even if it occurs between periods of activity that are compensable as hours of work.

5 C.F.R. § 551.412(b)(2) (1990). The OPM simultaneously promulgated a rule with nearly identical language in its regulations implementing the FEPA. Those regulations provide in relevant part:

A ... postshift activity that is not closely related to the performance of [an employee's] principal activities is considered a ... postliminary activity. Time spent in ... postliminary activities is excluded from hours of work and is not compensable, even if it occurs between periods of activity that are compensable as hours of work.

5 C.F.R. § 550.112(b)(2) (1990).

### B. *Factual Background*

In an effort to diminish the risk of terrorist acts at Robins Air Force Base, Georgia, the Air Force decided to build a security fence that restricts access to its flight-

---

1. Prior to 1974, federal employees' right to receive overtime compensation was governed solely by the FEPA. *See* 5 U.S.C. § 5542. In 1974 the FLSA became applicable to federal employees (with some exceptions inapplicable here), *see* 29 U.S.C. § 203(e)(2). Section 207(a)(1) of the FLSA provides a separate basis for overtime compensation.

The OPM is responsible for administering overtime provisions for federal employees under both the FLSA and the FEPA. *See* 29 U.S.C. § 204(f) and 5 U.S.C. § 5548. The OPM regulations implementing the two statutes apply generally to civilian employees of the federal government. *See* 5 C.F.R. § 551.102(d) and 5 C.F.R. § 550.101(a).

line. The security fence has a limited number of gates through which employees may exit the flightline, so that employees may on occasion be delayed in leaving their workstations at the end of their shifts because of malfunctioning gates or other obstructions. The union offered the following proposal for negotiation:

> [The Air Force] agrees to pay overtime if, at the end of an employees [sic] tour of duty the employee(s) can not exit through the gate because of mechanical malfunction or any other means of obstruction.

The Air Force declared the proposal nonnegotiable, under § 7117(a)(1) of the FSLMRS, contending that the proposal was inconsistent with government-wide OPM regulations governing postshift activities. *See* 5 C.F.R. § 551.412(b) and 5 C.F.R. § 550.112(b)(2). Pursuant to § 7105(a)(2)(E) of the FSLMRS, the union appealed the matter to the FLRA. The Authority ruled, with one member dissenting, that the proposal was not inconsistent with the OPM regulations cited and, thus, that the Air Force had a duty to bargain about it. *AFGE, Local 987 and U.S. Dep't of the Air Force, Robins Air Force Base,* 37 F.L.R.A. (No. 13) 197 (1990).

C. *The Authority's Rationale*

The Authority recognized that the represented employees are covered by both the FLSA and the FEPA, and that OPM government-wide regulations implementing the overtime provisions of these two statutes provide that compensation for such employees is governed by whichever statute would provide greater benefits. *See* 5 C.F.R. § 551.113. The Authority ultimately determined that the OPM regulation under the FEPA—5 C.F.R. § 550.112(b)(2)—would not allow bargaining over the union's proposal, but the nearly identical regulation under the FLSA—5 C.F.R. § 551.-412(b)—would allow bargaining. The Authority's interpretation of § 551.412(b) is therefore the central issue in this dispute.

The Authority acknowledged that the activity involved in the union's proposal—waiting to leave the workplace after completing a shift—is a "postliminary activity" within the meaning of § 551.412(b), and that the regulation is "government-wide" within the meaning of § 7117(a)(1) of the FSLMRS. The Authority concluded, however, that despite the language in that regulation stating "postliminary activit[y] . . . is not compensable," the union's proposal could nevertheless be negotiated because § 551.412(b) merely established a minimum floor of statutory "entitlements," which an agency and union may supplement in their collective bargaining agreement. In the Authority's view, the regulation did not lay down a mandatory rule for noncompensation of postliminary activities; it was designed only to clarify that federal employees did not have a statutory right under the FLSA to compensation for postliminary activities. Thus, agencies are not *required* to compensate employees for time spent in postliminary activities under the regulation, but they may do so if a collective bargaining agreement provides for it.

The Authority's conclusion was driven by its concern that the Air Force's interpretation of § 551.412(b) created a possible conflict with § 4(b) of the Portal-to-Portal Act's amendments to the FLSA. Although the general thrust of that Act was to eliminate employer liability for failure to compensate postliminary activities, § 254(b) contained an exception preserving employer liability in cases where a collective bargaining agreement expressly provided for postliminary compensation.[2] In order to avoid a perceived conflict between the OPM regulation and § 254(b), the Authority interpreted § 551.412(b) as not barring nego-

---

**2.** Section 4 of the Portal-to-Portal Act provides in relevant part:

(b) Notwithstanding the provisions . . . of this section which relieve an employer from liability and punishment with respect to any [postliminary] activity, the employer shall not be so relieved if such [postliminary] activity is compensable by . . .

(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer. . . .

29 U.S.C. § 254(b) (1988).

tiated compensation for postliminary activity.

## II. DISCUSSION

 We review the Authority's decision based on the entire record before the Authority and we will set it aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988); *AFGE, AFL–CIO, Local 2441 v. FLRA,* 864 F.2d 178, 184 (D.C.Cir.1988). The central issue here involves the Authority's interpretation of an OPM regulation, and although we defer to the Authority's construction of its enabling statute (the FSLMRS), we do not defer to the FLRA's interpretation of regulations promulgated by other agencies. *National Treasury Employees Union v. FLRA,* 848 F.2d 1273, 1275 (D.C.Cir.1988). Deference to the FLRA is especially inappropriate here because Congress specifically delegated to the OPM the authority "to administer" the FLSA's provisions on payment of overtime for postshift activity. 29 U.S.C. § 204(f); *see INS v. FLRA,* 709 F.2d 724, 729 n. 21 (D.C.Cir.1983). The Authority's interpretation of § 551.412(b) is therefore subject to *de novo* review. *Merit Systems Protection Bd. v. FLRA,* 913 F.2d 976, 979 (D.C.Cir.1990).

 Section 551.412(b) is found within a subpart of the OPM regulations promulgated under the FLSA, which define the hours of work for which minimal compensation is due to federal employees. Within that subpart, § 551.411 defines time that is compensable as part of the normal workday,[3] and § 551.412 describes the treatment of "concluding activities." If a concluding activity is closely related and indispensable to the employee's principal activities, and consumes more than 10 minutes per workday, that time "shall be credited" as hours of work, and is therefore compensable. 5 C.F.R. § 551.412(a)(1) & (2). On the other hand, if the concluding activity is not close-

ly related to the employee's principal activities, it is considered a "postliminary activity," and "time spent in ... postliminary activities is excluded from hours of work and is not compensable, even if it occurs between periods of activity that are compensable as hours of work." 5 C.F.R. § 551.412(b).

The categorical language "shall be credited" and "is not compensable" used throughout § 551.412 supports the Air Force's position that these regulations are intended as a mandatory bar to compensating the activity in the union's proposal. *See Exportal Ltda. v. United States,* 902 F.2d 45, 49–50 (D.C.Cir.1990) (regulations speaking in "categorical terms," using words such as "shall," are generally interpreted to be "mandatory or imperative, not merely precatory"). Nothing in the text of § 551.412 indicates even remotely that the OPM intended to establish minimum standards for government employees, capable of supplementation through collective bargaining or otherwise. On the contrary, by specifically proscribing what might be thought to be the most compelling case— time sandwiched between periods of compensable activity—the OPM gave the strongest of signals that it intended the rule to be an absolute limitation on what kind of peripheral activity could be compensable under the regulation.

In the rulemaking preceding the issuance of § 551.412(b), the OPM provided a further indication of the general prescriptive nature of its regulations limiting compensable time. Responding to the concern of one union that its proposed rule stating that "postshift activities would be compensable only if the total time spent in those activities totaled more than ten minutes per daily tour of duty" conflicted with the requirement of § 551.521(b) that "every minute of regularly scheduled overtime" was due compensation, the OPM responded simply

---

**3.** The regulations provide:

> For the purposes of this part, "workday" means the period between the commencement of the principal activities that an employee is engaged to perform on a given day, and the cessation of the principal activities for

that day. All time spent by an employee in the performance of such activities is hours of work. The workday is not limited to a calendar day or any other 24–hour period.

5 C.F.R. § 551.411(a) (1990).

that postshift activities *"cannot* be regularly scheduled overtime work, even if they are performed on a regular basis." 48 Fed.Reg. 36,804 (1983) (emphasis added).

Even more to the point, one agency and four trade associations raised concerns about the rule's potential for "crediting, as hours of work, time spent in nonwork activities" following compensable activities. The OPM flatly responded, "the final regulations specify that *only* time actually spent performing compensable ... postshift activities is creditable as hours of work and that *in no case* is credit allowed for a nonwork activity performed ... after an employee's principal activities." 48 Fed. Reg. 36,803–04 (1983) (emphasis added).

The Authority justified its interpretation of the regulation as not outlawing bargaining over postliminary compensation on language in the introductory provisions of Part 551, which described the FLSA as providing for "minimum standards for ... overtime entitlement," and stated that the OPM regulations "must be read in conjunction with [the Act]." 5 C.F.R. § 551.101(b) & (c).

█ We do not find either of the justifications for ignoring the plain words of the regulation at all convincing. Of course, these regulations are "minimum standards" because the FLSA itself purports to set out for private and public employees alike only their minimal entitlements to premium pay. In the case of the private employer, § 4(b) of the Portal-to-Portal Act's amendments does indeed leave open the possibility that a provision in a collective bargaining contract may provide for more. The government employee, however, is in an altogether different situation. A separate statute, the FSLMRS, governs collective bargaining between federal employees and government agencies, and § 7117 of that Act specifically bars negoti-

ation over proposals that are inconsistent with government-wide regulations. The OPM has been ceded the authority to make government-wide regulations under the FSLMRS as well as the FLSA and the FEPA. And it has issued such regulations barring compensation for postliminary activity under both the FEPA and the FLSA. Nothing in § 4(b) expressly grants federal employees the affirmative right to bargain over postliminary activities; the section simply recognizes that the Act does not apply where a bargained-for right exists at the time of the activity. The OPM appears in this instance to have exercised its broad authority under all three Acts mentioned to rule out such bargaining; if so, the absolute language prohibiting compensation in § 551.412(b) is in no disharmony with the FLSA. If the OPM had meant for postliminary activity to be compensable through negotiation under the FLSA, it would have had to affirmatively grant that right in these or other regulations in order not to run afoul of § 7117 of the FSLMRS and its designation as nonnegotiable any proposal inconsistent with government-wide regulations such as the provisions under the FEPA or the FLSA barring such compensation. Indeed at oral argument government counsel advised us that its appeal from the FLRA ruling had been taken after consultation with the OPM, a further circumstance which weakens the FLRA's position that the OPM did not intend to rule out bargaining over postliminary activities.

In sum, we find the Authority's interpretation of the regulation in this case cannot be upheld. It is clear from the language of the rule, the published implementing instructions, and the agency's responses to comments in the rulemaking itself, that the OPM intended its regulations in Part 551 to be mandatory.[4] The Authority's position

---

4. Thus the Authority's interpretation of the OPM regulation is compromised by its concession that the nearly identical rule promulgated under the FEPA, *see* 5 C.F.R. § 550.112(b)(2), would prevent bargaining over the union's proposal. *AFGE, Local 987 and U.S. Dep't of the Air Force, Robins Air Force Base,* 37 F.L.R.A. (No. 13) 197, 211–12 (1990). It seems highly unlikely that an

agency would use the exact same language to accomplish contradictory results under two statutes. Moreover, it is clear from the history of the two rules that the OPM intended the same result under both regulations. In simultaneously publishing § 551.412(b) and § 550.112(b)(2), the OPM remarked "they are intended to meet the unique needs of the Federal workplace and

**452**

that the rule does not prohibit but merely fails to provide for compensation of postliminary activity finds no support in its language or the OPM's conduct in issuing the same bar under the FEPA which would make it nonnegotiable under FSLMRS, in any case.[5] In our view, § 551.412(b) means what it unambiguously says: federal employees governed by this rule cannot be compensated for time they spend performing postliminary activities. The union proposes compensating employees at Robins Air Force Base for time spent in such activities. That proposal is inconsistent with § 551.412(b), a government-wide regulation, and therefore the Air Force is prevented by statute from bargaining over it.

 We express no opinion on whether the OPM regulation is in conflict with § 4(b) of the Portal-to-Portal Act's amendments to the FLSA, the main concern which drove the Authority to its unwarranted conclusion. The FLRA does not argue that § 551.412 actually conflicts with the FLSA; on the contrary, the Authority concedes that it has no power to adjudicate

the validity of the OPM regulation. *AFGE, Local 987,* 37 F.L.R.A. (No. 13) at 211. The purpose of the FLSA, according to the Authority, is to establish minimum levels of benefits for workers and not to preclude collective bargaining over greater benefits. If § 551.412 is ambiguous, the FLRA argues, then we should accept its interpretation of the regulation, which is—unlike the interpretation suggested by the Air Force—in harmony with the goals of the underlying statute. Apart from whether the Authority's interpretation of § 254(b) is in fact a valid one, the FLRA's argument fails because its premise is incorrect. The regulation is not ambiguous; the plain language of the regulation precludes compensation for postliminary activities.[6]

 As the FLSA recognized, the FLRA has authority only to address the question of *negotiability* of the union proposal. Its role is limited to determining whether a proposal is inconsistent with "*any* Federal law or *any* Government-wide rule or regulation." 5 U.S.C. § 7117(a)(1) (emphasis

---

to accomplish the integration of applicable provisions of civil service laws [FEPA] with those of the FLSA." 48 Fed.Reg. 36,803 (1983). Part of that integration was the uniformity of regulations regarding the compensability of preshift and postshift activities. *Id.* at 36,803–04. FPM Supplement 990–2, Book 550, App. I.

**5.** Previous Authority cases interpreting Part 551 contradict the Authority and the dissent's position in this case. In *National Association of Government Employees and Veterans Administration Medical Center,* 32 F.L.R.A. (No. 35) 206 (1988), a union proposal for negotiation called for a 30–minute break period for the federal employees involved. An OPM regulation authorized breaks for time periods of only 20 minutes. *See* 5 C.F.R. § 551.411(b). The Authority concluded, "this regulation ... applies *mandatory* policy ... [that] *limits* any single break or rest period within an employee's workday to 20 minutes. By seeking to provide for a 30–minute break period, the proposal is inconsistent with this *limitation.*" 32 F.L.R.A. (No. 35) at 210–11 (emphasis added). Similarly, in *American Federation of Government Employees and Department of Health and Human Services,* 31 F.L.R.A. (No. 31) 355 (1988), a union proposal asked that the agency grant compensation for additional commuting time required by assignments of employees to special details away from their regular duty station. The Authority concluded that such compensation would be inconsistent

with an OPM regulation that sets out compensable "hours of work." *See* 5 C.F.R. § 551.422(b). Clearly, in both cases the Authority construed Part 551 to be a ceiling not merely a floor upon compensable activity.

**6.** Our dissenting colleague argues that because the Secretary would, in his view, be exceeding her authority if she issued a regulation forbidding compensation for postliminary activity, then we cannot assume that she did so. That rule, paralleling the canon that statutes should whenever possible be construed so as to avoid constitutional questions, works only when the import of a regulation is ambiguous. When a rule (or a statute) is clear, a court cannot distort its meaning to avoid constitutional or statutory conflict. *Cf. Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 841, 106 S.Ct. 3245, 3251, 92 L.Ed.2d 675 (1986) (noting that court does not have "prerogative to ignore the legislative will ... so as to save [a statute] against constitutional attack, it must not and will not carry this [canon of construction] to the point of perverting the purpose of a statute or judicially rewriting it") (quoting *Aptheker v. Secretary of State,* 378 U.S. 500, 515, 84 S.Ct. 1659, 1668, 12 L.Ed.2d 992 (1964)). In the end, it is the executive, not the judiciary, which wields rulemaking power under our constitutional regime and must be held accountable for it. Courts cannot rewrite regulations at will to avoid conflicts with underlying statutes.

added). *See AFGE v. FLRA,* 794 F.2d 1013, 1015 (5th Cir.1986). Whether the OPM regulation, properly interpreted, would be invalid because of a conflict with § 254(b) is irrelevant to the negotiability question the Authority faced. The OPM has not been a party to any stage of this proceeding and the validity of its regulation is not at issue in this dispute. Any challenge to the legality of the OPM regulation under § 4(b) of the Portal-to-Portal Act must be brought in an appropriate forum.

### III. CONCLUSION

The government-wide regulations promulgated by the OPM under the FLSA do not allow compensation for time spent in concluding activities that are not closely related to principal work activities. We conclude that the Authority improperly determined that the union's proposal to bargain over such compensation was not inconsistent with these OPM regulations, and we set aside its decision on negotiability as contrary to law.

*It is so ordered.*

RANDOLPH, Circuit Judge, dissenting:

Federal employees at the Robins Air Force Base in Georgia want to bargain about being compensated for the time, at the close of the workday, when they are delayed from departing due to the malfunctioning of a security gate. In the scheme of things, this is a relatively minor labor dispute. But it has given rise to a ruling with significant consequences for federal employees across the nation. Today's decision bars these employees from engaging in collective bargaining to increase their overtime compensation beyond the bare minimum provided in the Fair Labor Standards Act (FLSA) and threatens to abrogate any existing collective bargaining agreements having that effect. Because I believe the majority reaches this result by misreading government-wide regulations issued by the Office of Personnel Management (OPM), I respectfully dissent.

A bit of background on the Fair Labor Standards Act will be helpful. Passed in 1938, the FLSA "was designed to give specific minimum protections" to private sector employees. *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981). The Act accomplishes this by guaranteeing covered employees a minimum wage and overtime compensation at "a rate not less than one and one-half times the regular rate at which" the individual is employed for all hours worked in excess of 40 hours per "workweek." 29 U.S.C. § 207(a)(1). In 1947, in the wake of several Supreme Court decisions broadly interpreting "workweek," Congress passed the Portal-to-Portal Act, 29 U.S.C. §§ 251–262, to clarify the scope of the FLSA's overtime provisions. The Act relieved employers of liability under the FLSA for their failure to pay overtime compensation to employees engaged in "activities which are preliminary to or postliminary to [their] principal activity or activities...." *Id.* § 254(a)(2). Reflecting the overall design of the FLSA, the portal-to-portal amendments expressly recognize that the parties may nevertheless provide, in a collective bargaining agreement, that employees will be paid for such preliminary and postliminary activities. *Id.* § 254(b)(1); *see generally Carter v. Panama Canal Co.,* 463 F.2d 1289, 1292–94 (D.C.Cir.), *cert. denied,* 409 U.S. 1012, 93 S.Ct. 441, 34 L.Ed.2d 306 (1972).

In 1974, the FLSA became generally applicable to federal employees. Congress gave OPM the authority to administer the FLSA, as amended, in the federal sector. 29 U.S.C. § 204(f). Pursuant to that authority, OPM promulgated the regulation at issue in this case, 5 C.F.R. § 551.412(b).

Section 551.412(b) provides:

A preparatory or concluding activity that is not closely related to the performance of the principal activities is considered a preliminary or postliminary activity. Time spent in preliminary or postliminary activities is excluded from hours of work and is not compensable, even if it occurs between periods of activity that are compensable as hours of work.

There is no dispute that the activity involved here—waiting at the gate to leave

the Base—is "postliminary." Whether the employees are nevertheless free to seek, through collective bargaining, more than the statute would entitle them to receive is another matter. If their doing so would be "inconsistent" with this regulation, the Air Force is relieved of any duty to bargain with them. 5 U.S.C. § 7117(a)(1). The question then is what import should be attributed to the regulation's words "excluded from hours of work and is not compensable." Does this mean only "not compensable" under the FLSA, in which event the regulation sets minimum requirements and is not inconsistent with collective bargaining? Or does the regulation mean, as my colleagues suppose, "not compensable" under any circumstances?

To the majority the regulation is unambiguous because nothing in its text indicates that it establishes only minimum standards. This analysis not only begs the ultimate question in the case, but also assumes that the regulation can be accurately interpreted by examining the text in isolation. This is the technique of misinterpretation, an "unadorned 'plain meaning' approach," as Judge Easterbrook described it, purporting to extract meaning from language without reference to the "linguistic, structural, functional, social, historical" context in which the words are used. *In re Sinclair*, 870 F.2d 1340, 1342 (7th Cir. 1989); *see Energy Research Found. v. Defense Nuclear Facilities Safety Bd.*, 917 F.2d 581, 583 (D.C.Cir.1990). To be sure, over time some phrases can acquire "a clearly accepted meaning in both legislative and judicial practice" so that when they appear in statutes or regulations they may be considered "unambiguous." *West Virginia Univ. Hosps., Inc. v. Casey,* — U.S. —, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991). But the phrases in this regulation are not of that sort. The point may be illustrated by supposing that the Secretary of Labor had promulgated a regulation identical to OPM's as part of her duty to administer the FLSA in the private sector. Not for a moment would anyone think the Secretary had thereby capped overtime compensation for private employees and, in the process, abrogated collective bargaining agreements providing more compensation than the law required. No one would entertain that idea because, as every employer and collective bargaining representative in this country surely knows, the FLSA sets forth only minimum levels of compensation. In other words, the regulation would be read in context, as regulations and statutes "must always be read," *McCarthy v. Bronson,* — U.S. —, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991).

The majority tells us that the regulation is worded in "categorical" terms. But even absolute language cannot be understood without determining the category to which it applies. "Congress shall make no law ... abridging the freedom of speech" is categorical, but its meaning is scarcely clear or self-evident, Justice Black to the contrary notwithstanding. *Konigsberg v. State Bar*, 366 U.S. 36, 60–68, 81 S.Ct. 997, 1011–16, 6 L.Ed.2d 105 (1961) (Black, J., dissenting). Categorical or not, one still must determine if the regulation at issue applies only to the setting of minimum levels of compensation under the FLSA or has the broader sweep the majority attributes to it.

The point is that no matter how "plain" the words in the regulation may seem, it is a mistake to suppose that the meaning of the regulation itself is therefore also plain. Early in this century that misguided approach to interpretation was frequently taken. That it persists, here in the majority opinion, reminds one of the observation, recalled by Justice Frankfurter, that " 'a theory survives long after its brains are knocked out.' " *Massachusetts Bonding Co. v. United States*, 352 U.S. 128, 138, 77 S.Ct. 186, 191, 1 L.Ed.2d 189 (1956) (dissenting, quoting T.X. Huxley). The knockout, Justice Frankfurter thought, had been delivered by Justice Holmes in *Boston Sand & Gravel Co. v. United States*, 278 U.S. 41, 48, 49 S.Ct. 52, 53, 73 L.Ed. 170 (1921), and by Judge Learned Hand in *Guiseppi v. Walling*, 144 F.2d 608, 624 (2d Cir.1944) (concurring), *aff'd sub nom. Gemsco, Inc. v. Walling*, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945), where Judge Hand caustically observed "[t]here is no

surer way to misread any document than to read it literally...." In discussing these opinions, Judge Friendly added his own warning against the "potential for solipsistic decision inherent in the 'plain meaning' rule" when its use "shut[s] off access to the very materials that might show [a statute] not to have been plain at all...." *Mr. Justice Frankfurter and the Reading of Statutes,* in BENCHMARKS 206 (1967).

Here there are such materials, the most important of which are the underlying statutes, namely the FLSA as modified by the Portal-to-Portal Act. About the FLSA the majority has little to say, except that it is not deciding whether the regulation is consistent with it—which makes Judge Friendly's point. Yet if ever there were a case in which a regulation must be construed in light of the statutes it implements,[1] this is it. The regulations, OPM instructed, *"must* be read in conjunction with the [Act]." 5 C.F.R. § 551.101(c) (emphasis added). When one is faithful to this command, it becomes apparent that the majority's interpretation cannot stand.

The fundamental consideration is that the FLSA sets only minimum standards, a floor, not the maximum amount an employer may agree to pay. In other words, employers may pay in excess of the minimum wage. Employees may bargain for more than time and a half for overtime. They may seek compensation for activities in addition to those for which the FLSA demands the payment of wages. As noted earlier, no private employer would be foolish enough to contend that the FLSA forbids additional compensation to employees, above the statutory minimum. The Portal-to-Portal Act explicitly recognizes that activities not compensable under the FLSA may nevertheless be made compensable by contract. 29 U.S.C. § 254(b)(1).

OPM knew this full well. Section 551.-101(b) of the regulations recognizes that "[t]he Act provides for minimum standards for both wages and overtime entitlements, and delineates administrative procedures by which covered worktime must be compensated." 5 C.F.R. § 551.101(b). It is in this context that OPM "prescribed [regulations] for the administration of the Act." *Id.* § 551.101(c). Under the majority's interpretation, however, OPM would not be administering the FLSA whenever it invoked the regulation at issue. Rather than ordering an employer to pay the minimum compensation required by law, it would be prohibiting employees from seeking to be paid anything more. That contradicts not only the FLSA but also OPM's express understanding of what it was doing when it formulated these regulations. To recognize this is not to give the regulation an interpretation in order to avert a conflict with the statute, as the majority asserts in its footnote citing *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 841, 106 S.Ct. 3245, 3251, 92 L.Ed.2d 675 (1986), nor is it to employ a variant of the canon of construing to avoid constitutional doubts. It is simply to consider the regulatory language in its statutory setting.

Professors Hart and Sacks suggested that "an essential part of the context of every statute is its purpose" and that "[a]ny judicial opinion ... which finds a plain meaning in a statute without consideration of its purpose, condemns itself." H. HART & A. SACKS, THE LEGAL PROCESS: BASIC PROBLEMS IN THE MAKING AND APPLICATION OF LAW 1156–57 (tent. ed. 1958). Here, the majority breathes not a word about the purpose of the regulation at issue. The only conceivable one consistent with the majority's construction is that OPM set out to put a lid on the amount of overtime pay employees might otherwise wind up getting through negotiation. But there is not even

1. *E.g., Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 213–14, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976); *Secretary of Labor v. Western Fuels–Utah, Inc.,* 900 F.2d 318, 320 (D.C.Cir.1990); *La Vallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Management Comm'n,* 866 F.2d 616, 623 (3d Cir.1989); *Campesinos Unidos, Inc. v. United States Dep't of Labor,* 803 F.2d 1063, 1069 (9th Cir.1986); *Emery Mining Corp. v. Secretary of Labor,* 744 F.2d 1411, 1414 (10th Cir. 1984); *Jochum v. Pico Credit Corp. of Westbank, Inc.,* 730 F.2d 1041, 1047 (5th Cir.1984); *Insurance Co. of North America v. Gee,* 702 F.2d 411, 414 (2d Cir.1983); *Trustees of Indiana Univ. v. United States,* 618 F.2d 736, 739, 223 Ct.Cl. 88 (1980).

a hint, in the regulations or elsewhere, that OPM had any such objective in mind. *See Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). If we take OPM at its word, and we must, the only purpose of the regulation was to implement the minimum wage and overtime provisions of the FLSA.

I am therefore left with the firm conclusion that when OPM stated in section 551.412(b) that time spent in postliminary activities shall be "excluded from hours of work and is not compensable," it meant "not compensable" under the FLSA, as amended. This interpretation is further strengthened by section 551.401, a provision entitled "Basic Principles." 5 C.F.R. § 551.401. One of these basic principles is that "[t]ime that is considered hours of work under this part shall be used *only* to determine an employee's entitlement to minimum wages or overtime pay under the Act...." *Id.* § 551.401(d) (emphasis added). This case presents the mirror image—time that is not "hours of work" under the regulations shall be so considered *only* "to determine an employee's entitlement to minimum wages or overtime pay under the Act." This takes on additional significance in light of the original version of the regulation at issue. When it first appeared in 1980, the regulation simply said that "a preliminary or postliminary activity ... is not considered hours of work," 45 Fed.Reg. 85,659, 85,664 (1980), to which the basic principle of section 551.401(d) would have required adding "under the Act." OPM appended the phrase "and is not compensable" in 1983, but gave no clue that it meant to change the substance of the regulation. Instead, it announced that it was merely altering the existing regulations in order to "simplify pay administration" and to "integrate the provisions of civil service laws with those of the Fair Labor Standards Act." 48 Fed.Reg. 36,803, 36,803 (1983). It is little wonder that in the face of that announcement the amendment caused scarcely a stir.

True enough, as the majority points out, OPM responded to the few comments it did receive by saying that "the final regulations specify that only time actually spent performing compensable ... postshift activities is creditable as hours of work and that in no case is credit allowed for a nonwork activity performed ... after an employee's principal activities." *Id.* at 36,803–04. The majority emphasizes the "only" and the "in no case," as if this advances its position. It does not. Those words only show that OPM meant its regulations to apply categorically. As discussed above, the categorical nature of the language tells little about the category itself. "Hours of work," to which OPM referred, must be read in conjunction with the "basic principle" of section 551.401(d) to mean "hours of work ... to determine an employee's entitlement to minimum wages or overtime pay *under the Act.*" 5 C.F.R. § 551.401(d) (emphasis added).

In short, the majority's interpretation of section 551.412(b) cannot be reconciled with the FLSA, it is inconsistent with OPM's stated purpose for promulgating the regulations, and it cannot be squared with the principles OPM thought basic to its administration of the statute. The FLSA does not bar employees from receiving compensation for any time not covered by the FLSA, and it does not permit employers, public or private, to avoid collective bargaining by setting the maximum level of compensation at the federally-prescribed minimum. Neither does section 551.412(b).[2]

---

2. I express no view on whether 5 C.F.R. § 550.112(b)(2), promulgated under the Federal Employees Pay Act and mentioned by the majority in a footnote, precludes collective bargaining over compensation for postliminary and preliminary activities. Although the Federal Labor Relations Authority observed that absent the FLSA, this regulation would be inconsistent with such bargaining, the Authority did not in fact find any such inconsistency. *AFGE, Local 987 and U.S. Dep't of Air Force,* 37 F.L.R.A. (No. 13) 197, 210 (1990). Furthermore, it is not clear

that § 550.112(b)(2) still applies to the employees at Robins Air Force Base. The Federal Employees Pay Comparability Act of 1990 seems to indicate that the FLSA alone now governs overtime pay for employees like those at the Base. Pub.L. No. 101–509, tit. V, 104 Stat. 1427, 1460 (1990) (codified at 5 U.S.C. § 5542(c)). Finally, I see no necessary conflict between §§ 550.112(b)(2) and 551.412(b). OPM issued these nearly identically-worded regulations simultaneously for the stated purpose of simplifying pay administration, not complicating it by creating conflicting schemes. 48 Fed. Reg. 36,803, 36,805 (1983). (I would also think that our decision in *Carter v. Panama Canal Co.,* 463 F.2d at 1300, 1303 & n. 40, requires us to construe the Federal Employees Pay Act, and the regulations implementing it, in light of Congress' policy of extending privileges to federal employees comparable to those enjoyed by employees covered by the FLSA.)