**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEPARTMENT OF THE TREASURY -
INTERNAL REVENUE SERVICE,
                              *Petitioner,*

            v.

FEDERAL LABOR RELATIONS
AUTHORITY,
                              *Respondent,*

NATIONAL TREASURY EMPLOYEES
UNION,
                              *Intervenor.*

No. 05-76031

No. 61 FLRA
NO. 30

FEDERAL LABOR RELATIONS
AUTHORITY,
                              *Petitioner,*

            v.

DEPARTMENT OF THE TREASURY -
INTERNAL REVENUE SERVICE;
NATIONAL TREASURY EMPLOYEES
UNION,
                              *Respondents.*

No. 05-76391

No. 61 FLRA
NO. 30

OPINION

On Petition for Review of an Order of the
Federal Labor Relations Authority

Argued and Submitted
December 5, 2007—San Francisco, California

Filed April 3, 2008

3501

Before: Alex Kozinski, Chief Judge, Robert E. Cowen,* and Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Cowen

---

*The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

## COUNSEL

William G. Kanter, Esq., Christine N. Kohl, Esq., U.S. Department of Justice, Washington, D.C., for the petitioner-respondent.

David M. Smith, William R. Tobey, Esq., David M. Shewchuk, Esq., and James F. Blandford, Esq., Federal Labor Relations Authority, Washington, D.C., for the respondent-petitioner.

Barbara A. Atkin, Esq., Julie M. Wilson, Esq., Gregory O'Duden, Esq., National Treasury Employers Union, Washington, D.C., for the intervenor.

## OPINION

COWEN, Circuit Judge:

The Department of Treasury, Internal Revenue Service ("IRS"), petitions this court to review an August 10, 2005, order by the Federal Labor Relations Authority ("FLRA"). The FLRA, along with the intervenor, the National Treasury Employees Union ("NTEU"), has cross-petitioned this court to enforce the FLRA's order. For the following reasons, we will deny the IRS's petition for review and grant the FLRA's cross-petition for enforcement.

## I.   FACTUAL BACKGROUND

The facts underlying this case are not in dispute. In 1998, the IRS temporarily assigned revenue officers and revenue agents from its Tacoma, Everett, and Bellevue, Washington offices to work at the Seattle district headquarters. These employees assisted with walk-in and telephone customers.

At all times relevant to this case, the IRS and the NTEU operated under a collective bargaining agreement ("CBA"). Article 29, Section 3E of the CBA stated that, "[w]hen an employee travels from his/her residence to a point of destination within his/her official duty station, he/she should not be required to leave home any earlier or arrive home any later than he/she does when he/she travels to and from his/her usual assigned place of business." The Tacoma, Everett, Bellevue, and Seattle offices were all located within the same official duty station.

The NTEU filed a grievance asserting that the IRS failed to compensate the transferred employees for their increased commute time in violation of Article 29, Section 3E of the CBA. In July 2000, the arbitrator found that Article 29, Section 3E applied to the affected employees. The arbitrator also determined that the provision would allow for compensation for the extra commute time. Furthermore, the arbitrator found that the CBA provision constituted an "express provision," which permitted compensation to these federal employees under the Portal-to-Portal Act, 29 U.S.C. §§ 251-262. The arbitrator stated that the IRS "violated the FLSA [Fair Labor Standards Act, 29 U.S.C. §§ 201-219] by not permitting employees to travel to and from the Seattle Jackson Federal Building in accordance with the procedure required by Article 29, Section 3E." Thus, the arbitrator sustained the grievance and ordered the IRS to cease and desist from failing or refusing to implement Article 29, Section 3E of the CBA.

The IRS filed exceptions to the arbitrator's award with the FLRA. Before the FLRA, the IRS raised several arguments: (1) the arbitrator's award was contrary to law because 5 C.F.R. § 551.422(b)[1] prohibited federal employees from being compensated for commute time; (2) Article 29, Section 3E of the CBA fell short of being the type of "express provision" of a contract necessary to fall under 29 U.S.C. § 254(b)(1) of the Portal-to-Portal Act; and (3) Article 29, Section 3E was not a clear statement of an agreement to allow payment to affected employees for their commute time. The FLRA denied the exceptions. *United States Dep't of Treasury Internal Revenue Serv.*, 57 F.L.R.A. 444, 2001 WL 950798 (2001). It rejected the latter two arguments on the merits. With respect to the first argument, the FLRA concluded that the IRS had failed to make this argument to the arbitrator. Thus, pursuant to 5 C.F.R. § 2429.5,[2] the FLRA refused to consider this new argument on appeal of the arbitrator's award.

After the FLRA denied the exceptions, the IRS refused to implement the arbitrator's award. As a result, the NTEU filed an unfair labor practice charge. The NTEU asserted that the IRS failed to comply with the arbitrator's award as required by 5 U.S.C. § 7121 and § 7122. It argued that this constituted an unfair labor practice under 5 U.S.C. § 7116(a)(1), (8). Ini-

---

[1] 5 C.F.R. § 551.422(b) states that:

> An employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal "home to work" travel; such travel is not hours of work. When an employee travels directly from home to a temporary duty location outside the limits of his or her official duty station, the time the employee would have spent in normal home to work travel shall be deducted from hours of work as specified in paragraphs (a)(2) and (a)(3) of this section.

[2] 5 C.F.R. § 2429.5 states that, "[t]he Authority will not consider evidence offered by a party, or any issue, which was not presented in the proceedings before the Regional Director, Hearing Officer, Administrative Law Judge, or arbitrator. The Authority may, however, take official notice of such matters as would be proper."

tially, the FLRA determined that the NTEU's unfair labor practice charge was untimely. However, the D.C. Circuit reversed and remanded the matter back to the FLRA for consideration on the merits. *See Nat'l Treasury Employees Union v. Fed. Labor Relations Auth.*, 392 F.3d 498, 501 (D.C. Cir. 2004).

On remand, the IRS did not dispute that it failed to implement the arbitrator's award. However, it argued that it did not commit an unfair labor practice because implementing the arbitrator's award would have required the IRS to engage in an illegal act of compensating the affected employees for their travel time. Specifically, the IRS asserted that the doctrine of sovereign immunity precluded an order of monetary relief absent a showing of an express waiver by the United States. Once again, the IRS argued that 5 C.F.R. § 551.422 precluded paying the employees for their commute time.

The FLRA considered the sovereign immunity argument on the merits after noting that the issue could be raised at any time. The FLRA determined that 5 C.F.R. § 551.422 had no affect on the sovereign immunity issue because 29 U.S.C. § 254(b) waived the government's sovereign immunity under the circumstances of this case. Therefore, the FLRA determined that the arbitrator's award was enforceable, and that the IRS violated 5 U.S.C. § 7116(a)(1), (8) by failing to comply with the arbitrator's award. It ordered the IRS to cease and desist from failing to comply with the arbitrator's award. The FLRA ordered that: "(1) bargaining unit employees who were required to travel outside their normal tour of duty to their temporary duty assignment be identified, including the length of their temporary assignment; and (2) affected bargaining unit employees be compensated for time spent commuting to their temporary duty assignment." The IRS brought this petition for review order and the FLRA cross-petitioned for enforcement of its order.

## II.   APPELLATE JURISDICTION AND STANDARD OF REVIEW

This Court has appellate jurisdiction over the FLRA's order pursuant to 5 U.S.C. § 7123(a). "[W]e will set aside only FLRA decisions that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.' " *Nat'l Treasury Employees Union (NTEU) v. Fed. Labor Relations Auth.*, 418 F.3d 1068, 1071 n.5 (9th Cir. 2005) (quoting 5 U.S.C. § 706(2)(A)). We review de novo the FLRA's interpretation of a statute that it does not administer. *See id.* (citations omitted); *see also United States Dep't of Air Force v. Fed. Labor Relations Auth.*, 952 F.2d 446, 450 (D.C. Cir. 1991) (noting that no deference is accorded to FLRA's interpretation of the FLSA because "Congress specifically delegated to the [Office of Personnel Management] the authority 'to administer' " the Act's provisions on overtime pay).

## III.   DISCUSSION

The issue presented in this case is whether the FLRA's award of compensation to those affected employees was in error because it violated the United States' sovereign immunity. The parties dispute whether the United States has waived sovereign immunity under the Portal-to-Portal Act. The IRS asserts that the Portal-to-Portal Act does not expressly waive sovereign immunity. The FLRA and the NTEU counter by arguing that the Portal-to-Portal Act must be read as a complement to the FLSA under these circumstances.

### A.   *Sovereign Immunity, the FLSA and the Portal-to-Portal Act*

[1] We will consider the issue of sovereign immunity on the merits because it can be raised at any time by the government, as it goes to a court's jurisdiction. *See Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005) (citing *Brown v. Sec'y of Army*, 78 F.3d 645, 648 (D.C. Cir.

1996)). Indeed, as the Supreme Court has noted, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

**[2]** The waiver of the United States' sovereign immunity must be unequivocally expressed in the statutory text and will not be implied. *See Lane v. Pena*, 518 U.S. 187, 192 (1996). Furthermore, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* (citing *United States v. Williams*, 514 U.S. 527, 531 (1995); *Library of Cong. v. Shaw*, 478 U.S. 310, 318 (1986); *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981)). Additionally, "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; 'the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text.' " *Id.* (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 37 (1992)).

**[3]** The FLSA was enacted in 1938, and, among other things, granted covered employees statutory rights to overtime compensation. *See* 29 U.S.C. § 207. These rights are enforceable under the FLSA through various remedies, as stated at 29 U.S.C. § 216.[3] In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946), the Supreme Court defined "work-

---

[3]29 U.S.C. § 216(b) states that:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

week" to include the time spent by employees walking from their time clocks to their workstations. In response to *Anderson*, Congress passed the Portal-to-Portal Act in 1947. *See* 29 U.S.C. § 251(a) (finding that the FLSA "has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees"). The Act pared back the definition of "workweek" set forth in *Anderson*. Indeed, as one court has noted with respect to the Portal-to-Portal Act:

> [w]alking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and activities which are preliminary to or postliminary to said principal activity or activities are excluded from FLSA's protections by the Portal-to-Portal Act; employers need not pay employees overtime . . . for such activity.

*Adams v. United States*, 471 F.3d 1321, 1325 (Fed. Cir. 2006) (internal quotation marks omitted), *cert. denied*, 128 S. Ct. 866 (2008).

**[4]** However, the Portal-to-Portal Act carved out two exceptions, which do not relieve an employer from paying overtime; specifically:

> Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to any activity, the employer shall not be so relieved if such activity is compensable by either —
>
> (1)   an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

(2)   a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

29 U.S.C. § 254(b). Additionally, the Portal-to-Portal Act states that when the terms "employee" and "employer" are used in relation to the FLSA, they each have the same meaning as defined under the FLSA. *See* 29 U.S.C. § 262(a).

In 1974, Congress amended the FLSA by expanding the definition of "employee," and the statute states that:

In the case of an individual employed by a public agency, such term means —

any individual employed by the Government of the United States —

(i)   as a civilian in the military departments (as defined in section 102 of Title 5),

(ii)   in any executive agency (as defined in section 105 of such title),

(iii)   in any unit of the judicial branch of the Government which has positions in the competitive service,

(iv)   in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces,

(v)   in the Library of Congress, or

(vi)   the Government Printing Office[.]

*Id.* § 203(e)(2)(A). Thus, "Congress extended the Act to cover most government employees." *El-Sheikh v. United States*, 177 F.3d 1321, 1323 (Fed. Cir. 1999). Government employees were given the right to sue for violations of the FLSA, including those pertaining to overtime compensation. *See id.* By authorizing suits against the United States, the amendment waives the government's sovereign immunity. *See id.* at 1324 (citing *Saraco v. United States*, 61 F.3d 863, 865-66 (Fed. Cir. 1995); *Cosme Nieves v. Deshler*, 786 F.2d 445, 449 (1st Cir. 1986)).

No party disputes that the FLSA waives the United States' sovereign immunity. Instead, the IRS argues that the FLSA is not applicable in this case and that the Portal-to-Portal Act does not expressly waive sovereign immunity. For the following reasons, we disagree.

In *Lane*, the Supreme Court analyzed whether the United States waived sovereign immunity under 29 U.S.C. § 794(a) of the Rehabilitation Act of 1973. 518 U.S. at 189. The Supreme Court specifically looked at the remedies provision of the statute in determining that the United States had not waived sovereign immunity. *See* 518 U.S. at 192-93. Therefore, in determining whether the United States has waived sovereign immunity in this case, we will examine the remedies provision of the statute.

**[5]** As previously noted, this case was brought on behalf of affected employees seeking overtime pursuant to Article 29, Section 3E of the CBA. Indeed, the arbitrator recognized that the IRS violated the FLSA in not complying with the CBA provision. Under these circumstances, the Portal-to-Portal Act's exception under 29 U.S.C. § 254(b)(1) must be read in conjunction with the FLSA. *Cf. Astor v. United States*, 79 Fed. Cl. 303, 319 (2007) (noting that the Back Pay Act and the FLSA should be read as complementary where plaintiffs sought interest on their back pay awards, not on liquidated damages); *Adams v. United States*, No. 00-447C, 2003 WL

22339164, at *1 (Fed. Cl. Aug. 11, 2003) (noting that claims for back pay under the FLSA are governed by the Portal-to-Portal Act's statute of limitations), *aff'd*, 391 F.3d 1212 (Fed. Cir. 2004). The relevant remedies provision for overtime protections is found within the FLSA. *See* 29 U.S.C. § 216.

**[6]** This is a case that concerns overtime. The FLSA has always governed overtime, and although NTEU supports its claim for overtime compensation by invoking the Portal-to-Portal Act, we nevertheless look to the FLSA's remedies provision to determine whether the government waived its sovereign immunity. *See Adams v. United States*, 48 Fed. Cl. 602, 609 (2001) (noting that in the case of overtime pay under the FLSA, the statute itself provides the remedy and that the FLSA's remedial provision is a source of back pay). Because the Portal-to-Portal Act's remedies for overtime are found within the FLSA, and no party disputes that the FLSA waives sovereign immunity, the FLRA properly determined that the United States waived sovereign immunity.[4]

---

[4]A monetary award can be either legal or equitable in nature. *See Dep't of Army v. Fed. Labor Relations Auth.*, 56 F.3d 273, 276 (D.C. Cir. 1995). The remedy will be considered equitable if it is an attempt to give the plaintiff what he is entitled to as opposed to a substitute for a consequential loss. *See id.* In *Department of Army*, the Army Finance and Accounting Office ("FAO") increased the lag between pay periods from ten to twelve days. *See id.* at 274. However, the new policy was not announced in advance, and it resulted in several employees having insufficient funds in their bank accounts to cover checks they had written. *See id.* The FLRA ordered the FAO to reimburse all employees for monies lost or interest charged as a result. *See id.* at 274-75. The D.C. Circuit noted that:

> proper notice of the pay-lag policy change was the thing to which the commissary employees were entitled. The interest charges for which the employees seek compensation are sums they lost only as a consequence of the Army's failure to give them the notice they were due. Accordingly, any compensation for such interest is properly characterized as "money damages."

*Id.* at 276. Ultimately, the court reviewed 5 U.S.C. § 7105(g)(3) (setting out the powers and duties of the FLRA) and 5 U.S.C. § 7118(a)(7)

## B.   *The IRS's alternative arguments*

In its brief, the IRS makes several additional arguments, each of which is unpersuasive.

### i.   *Expressness of the CBA versus expressness of the statutory*

**[7]** First, the IRS argues that the FLRA misconstrued the law of sovereign immunity by basing the waiver on language within the CBA, as opposed to the statutory text. As previously noted, only if the statutory text is explicit can the United States' sovereign immunity be deemed waived. *See Lane*, 518 U.S. at 192. The mere fact that the IRS and the NTEU came to an agreement in the CBA regarding the compensation of affected employees is plainly insufficient to show a waiver of sovereign immunity. However, in this case, the FLRA did not rely on the CBA in determining that there was a waiver of sovereign immunity. Initially, the arbitrator found that the IRS violated the FLSA, as amended by the Portal-to-Portal Act. The FLRA was clear that it relied on the Portal-to-Portal Act in determining that sovereign immunity had been waived. Indeed, it specifically stated that 29 U.S.C. § 254(b) was "a statute that in the circumstances presented waived the Government's sovereign immunity." Therefore, the requisite statutory waiver was present, as opposed to an insufficient contractual waiver.

---

(addressing prevention of unfair labor practices) of the Federal Service Labor Management Relations Act ("FSLMRA"), and determined that the United States had not waived sovereign immunity to the award of monetary damages. *Dep't of Army*, 56 F.3d at 279. However, unlike the monetary award in *Department of Army*, the FLRA's award of compensation in this case was an order of the very thing to what the affected employees were entitled to under the arbitrator's award. Additionally, the award of compensation in this action was under the Portal-to-Portal Act, as a complement to the FLSA, as opposed to the award via the FSLMRA in *Department of Army*.

### ii.   *Air Force* and *NTEU*

Next, the IRS asserts that the FLRA's order to pay compensation to affected employees is in conflict with *Air Force*, 952 F.2d 446, and our decision in *NTEU*, 418 F.3d 1068. For the following reasons, those two cases are clearly distinguishable.

In *Air Force*, the Air Force petitioned for review of an FLRA order requiring it to engage in collective bargaining over a proposal advanced by the union. 952 F.2d at 447. The union proposal called for overtime compensation for the time employees were delayed in leaving the worksite due to security measures. *See id.* The D.C. Circuit noted that the FSLMRS, 5 U.S.C. §§ 7101-7135, imposed a duty on both parties to negotiate over the conditions of employment in good faith. *See Air Force*, 952 F.2d at 447 (citing 5 U.S.C. §§ 7114, 7117). However, the court explained that the FSLMRS stated that a federal agency may not negotiate over proposed conditions that were inconsistent with federal law, or a government-wide rule or regulation. *See id.* (citing 5 U.S.C. § 7117(a)(1)).

Under the FSLMRS, the Office of Personnel Management ("OPM") is charged with the authority to issue regulations. *See id.* at 448. The D.C. Circuit ultimately held that a government-wide regulation did not allow compensation for time spent in concluding activities that were not clearly related to principal work activities. *See id.* at 453. Thus, the court found that the union proposal was non-negotiable. In so concluding, the D.C. Circuit expressed no opinion on whether the regulation was in conflict with 29 U.S.C. § 254(b) of the Portal-to-Portal Act. *See id.* at 452.

Subsequent to *Air Force*, this Court decided *NTEU*. In *NTEU*, we were also presented with a negotiability appeal. In fact, in that case, the NTEU wanted to include an identical provision to Article 29, Section 3E in its proposed new CBA with the IRS. *See* 418 F.3d at 1069. The IRS approved the

provision, but the Secretary of Treasury disapproved of the language pursuant to his duty to review the agreement under 5 U.S.C. § 7114(c). The Secretary of Treasury determined that the provision would run contrary to 5 C.F.R. § 551.422(b). *See NTEU*, 418 F.3d at 1070. Ultimately, we held that the provision was inconsistent with the regulation. *See id.* at 1072. Thus, the provision was non-negotiable under the FSLMRS. *See id.*

Unlike both *Air Force* and *NTEU*, this is not a negotiability appeal. Indeed, both of those cases stood for the proposition that the federal government can — through regulation — direct its agencies not to engage in negotiation on such issues. *See Air Force*, 952 F.2d at 451 (stating that "the FSLMRS, governs collective bargaining between federal employees and government agencies, and § 7117 of that Act specifically bars negotiation over proposals that are inconsistent with government-wide regulations"). In this case, had the IRS raised the regulations at the proper time, *Air Force* and *NTEU* would apply. However, the mere fact that the regulations made Article 29, Section 3E non-negotiable based on the OPM regulations does not address the issue of whether the Portal-to-Portal Act should be considered as part of the FLSA's larger statutory scheme in this case. Therefore, we conclude that those cases are not controlling on this petition for review.

### iii.   *The Portal-to-Portal Act and Federal Employees*

**[8]** Next, the IRS asserts that the Portal-to-Portal Act does not apply to federal employees. But, the Portal-to-Portal Act's definition of employer and employees are the same as defined under the FLSA. *See* 29 U.S.C. § 262(a). When the 1974 amendments to the FLSA included federal employees, they also amended the Portal-to-Portal Act to include federal employees.

### iv.  *The Unfair Labor Practice decision did not lack a reasoned basis*

**[9]** Finally, the IRS argues that the FLRA's February 10, 2005, order lacked a reasoned basis because it was inconsistent with our decision in *NTEU*. As previously stated, *NTEU* and our holding today do not conflict. Furthermore, this argument by the IRS constitutes a collateral attack on the initial FLRA order, which upheld the arbitrator's award. Our review in this case is limited to only considering whether an unfair labor practice was committed by the IRS's failure to implement the arbitrator's award. *See United States Marshals Serv. v. Fed. Labor Relations Auth.*, 778 F.2d 1432, 1437 (9th Cir. 1985). Here, the IRS's continuous refusal to abide by the FLRA's initial order enforcing the final arbitration award constituted an unfair labor practice. *See id.*

## IV.  CONCLUSION

The Portal-to-Portal Act exception for compensation for travel time must be read in conjunction with the FLSA under these circumstances. The United States' sovereign immunity was waived because the FLSA expressly waives sovereign immunity. The IRS's petition for review is denied and the FLRA's petition for enforcement of its February 10, 2005, order is granted.

**PETITION DENIED in No. 05-76031; PETITION GRANTED in No. 05-76391; Order of the FLRA ENFORCED.**