# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| E. V., *Plaintiff-Appellant*, v. EUGENE H. ROBINSON, JR., Lieutenant Colonel, U.S. Marine Corps, in his capacity as Military Judge; DAVID A. MARTINEZ, Sergeant, U.S. Marine Corps., as Indispensable Party, *Defendants-Appellees*. | No. 16-16975 D.C. No. 2:16-cv-01973-JAM-CKD OPINION |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted June 14, 2018
San Francisco, California

Filed October 17, 2018

Before: Eugene E. Siler,* Richard A. Paez,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Paez

---

* The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Sovereign Immunity

The panel affirmed the district court's dismissal on sovereign immunity grounds of an action brought by E.V., a civilian on a military base in Japan, seeking to enjoin the release of her mental health records.

E.V. filed this action against Judge Robinson in his official capacity as a military judge who presided over the court-martial of a service member accused of sexually assaulting E.V. Judge Robinson conducted an in camera review of E.V.'s mental health records and ordered that portions of those records be released to the court-martial parties pursuant to a qualified protective order.

The panel applied the framework set out in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), and held that sovereign immunity barred E.V.'s non-constitutional claims for injunctive relief because those claims were considered to be against the government and the government had not waived its immunity. The panel further held that, under *Larson*, E.V.'s constitutional claims were considered to be against Judge Robinson as an individual and thus were not barred by sovereign immunity. The panel concluded, however, that E.V.'s constitutional claims must be dismissed on other grounds.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Specifically, the panel held: (1) the 1976 amendment to section 702 of the Administrative Procedure Act did not abrogate the *Larson* framework in suits where section 702's waiver of sovereign immunity did not apply; (2) under *Larson*, suits for specific relief that were pleaded against federal officials in their official capacities were not per se barred by sovereign immunity; (3) E.V.'s non-constitutional claims were barred by sovereign immunity because they did not allege *ultra vires* action for purposes of the *Larson* framework, and the government had not waived its sovereign immunity over such claims;  (4) E.V.'s Fourth Amendment allegations were not  "against the government" under *Larson* and thus were not barred by sovereign immunity, but such allegations failed to state a claim under Fed. R. Civ. P. 12(b)(6); and (5) E.V.'s constitutional claim challenging Judge Robinson's reliance on the "constitutionally required" evidentiary exception was similarly not barred by sovereign immunity, but failed for lack of redressability.

---

**COUNSEL**

Peter Coote (argued), Pennoni Associates Inc., Philadelphia, Pennsylvania, for Plaintiff-Appellant.

Gregory Thomas Broderick (argued), Assistant United States Attorney, United States Attorney's Office, Sacramento, California, for Defendants-Appellees.

**OPINION**

PAEZ, Circuit Judge:

We must decide whether the doctrine of federal sovereign immunity bars this suit for injunctive relief against Lieutenant Colonel Eugene H. Robinson, Jr., ("Judge Robinson") in his official capacity as a military judge. Judge Robinson presided over the court-martial of a service member accused of sexually assaulting appellant E.V., a civilian, on a military base in Japan. In the course of the court-martial proceedings, Judge Robinson conducted an in camera review of E.V.'s mental health records and subsequently ordered that portions of those records be released to the court-martial parties pursuant to a qualified protective order.

E.V. sought review of that ruling in the military courts, but was not successful. She then filed this action in federal court. She alleges violations of the Military Rules of Evidence, the Uniform Code of Military Justice, and the Constitution, and initially sought to enjoin the release of her mental health records. After the district court dismissed the complaint on sovereign immunity grounds, however, Judge Robinson released E.V.'s mental health records subject to the terms of the protective order. In light of this development, E.V. seeks an order requiring Judge Robinson to destroy all copies of the records in his possession and to instruct the court-martial parties to do likewise.

Applying the framework set out in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), we conclude that sovereign immunity bars E.V.'s non-constitutional claims for injunctive relief because those claims are considered to be against the government and the government has not waived its immunity. We further

conclude that, under *Larson*, E.V.'s constitutional claims are considered to be against Judge Robinson as an individual and thus are not barred by sovereign immunity. We can affirm the district court on any basis supported by the record, however, and we conclude that E.V.'s constitutional claims must be dismissed on other grounds. Accordingly, we affirm the dismissal of the complaint and the denial of E.V.'s motion for injunctive relief.

## I.

## A.

This case arises out of the court-martial of Marine Corps Sergeant David Martinez, who was charged with sexually assaulting E.V. on New Year's Eve 2014. At the time of the alleged assault, E.V. was residing on Kadena Air Base in Okinawa, Japan, with her husband, a staff sergeant in the United States Air Force. Sgt. Martinez was their neighbor on the base.

On February 12, 2015, E.V.'s husband requested a compassionate reassignment from Kadena Air Base to Travis Air Force Base in California so that E.V. would be separated from Sgt. Martinez and closer to her family. E.V.'s husband's commanding officer recommended approval of the request on February 17, 2015, but over the next three days, the reassignment review office repeatedly requested substantiating documentation for the transfer.

On February 20, 2015, E.V. was admitted to the U.S. Naval Hospital Okinawa ("Naval Hospital") for suicidal ideations. She was discharged on February 23, 2015. The same day, E.V.'s husband submitted E.V.'s two-page patient discharge summary in support of his request for compassionate reassignment. The reassignment request was

finally approved in March 2015, and E.V. and her husband returned to the United States. E.V., who had sought psychotherapy counseling at the Kadena Health Clinic from January to March 2015, continued to seek psychotherapy counseling upon her return.

## B.

In June 2015, Sgt. Martinez was charged with two violations of the Uniform Code of Military Justice ("UCMJ") relating to the alleged sexual assault on E.V., and the case was referred to a general court-martial. Judge Robinson presided as the military judge.

During the court-martial proceedings, Sgt. Martinez requested notice of whether E.V. sought mental health treatment in connection with the allegations in the case, as well as the records of any such treatment. The military prosecutor responded that E.V. had sought mental health treatment but, along with E.V.'s special victims counsel, opposed the request to produce the treatment records. The military prosecutor and special victims counsel asserted that E.V.'s mental health records were irrelevant and privileged under Military Rule of Evidence 513 ("MRE 513"), which codifies the psychotherapist-patient privilege. Sgt. Martinez moved to compel production of the mental health records, or, in the alternative, for Judge Robinson to conduct an in camera review to determine whether the records were discoverable. *See* MRE 513(e)(3) (setting out procedural requirements for conducting in camera review of psychotherapist-patient records). Judge Robinson denied the motion, viewing it as an invitation to "engage in a fishing expedition" into E.V.'s mental health records.

In the course of discovery, however, the military prosecutor ultimately provided Judge Robinson with two

pages of non-privileged mental health records for in camera review.  The records consisted of the February 2015 patient discharge summary prepared by the Naval Hospital following E.V.'s admission for suicidal ideations.  Judge Robinson then released those records to Sgt. Martinez subject to a protective order, as it was undisputed that any privilege had been waived as a result of the records' prior disclosure to support E.V.'s husband's reassignment request.  In light of the information contained in the records, Sgt. Martinez moved for Judge Robinson to reconsider his prior denial of the motion to compel production of E.V.'s mental health records or conduct an in camera review.

On January 13, 2016, Judge Robinson granted the motion for reconsideration as it related to the request for in camera review of E.V.'s mental health records, stating that he would determine whether releasing the records "meets a standard under Mil. R. Evid. 513, with a particular emphasis on bias/motive to fabricate."  Two weeks later, Judge Robinson granted the motion for reconsideration as it related to releasing portions of E.V.'s mental health records, with redactions and subject to a protective order.  Judge Robinson did not provide a reasoned explanation for granting reconsideration, although he clarified that "the material covered by this Order is not admitted into evidence, but is made available to the parties for their possible use in examining and cross-examining E.V. at trial concerning a possible bias or motive to fabricate."

Subsequently, on February 19, 2016, Judge Robinson sua sponte issued a supplemental order setting out his reasoning for granting reconsideration.  In the supplemental order, Judge Robinson relied on two independent grounds for releasing E.V.'s mental health records: (1) MRE

513(d)(5) (the "crime-fraud exception")[1] and (2) the "constitutionally required" exception. With respect to the crime-fraud exception, Judge Robinson reasoned that the "evidence presented cast doubts on the validity of any suicidal ideations in this case," and "the timing of the report [of the patient discharge summary] and treatment show Mrs. E.V.'s tactical use (i.e., fraud) of the process to obtain a material gain." As for the "constitutionally required" exception, Judge Robinson recognized that former MRE 513(d)(8) codifying the exception had been repealed, but he concluded that the "same exception appears in Mil. R. Evid. 412(b)(1)(C)."[2] Judge Robinson further concluded that, because the mental health records were relevant, material, and had probative value outweighing the danger of unfair prejudice, they were "constitutionally required."

## C.

On February 25, 2016, E.V. filed a petition for a writ of mandamus in the Navy-Marine Corps Court of Criminal Appeals ("NMCCA") under UCMJ Article 6b(e), seeking to

---

[1] Under the crime-fraud exception, the psychotherapist-patient privilege does not apply "if the communication clearly contemplated the future commission of a fraud or crime or if the services of the psychotherapist are sought or obtained to enable or aid anyone to commit or plan to commit what the patient knew or reasonably should have known to be a crime or fraud." MRE 513(d)(5).

[2] Military Rule of Evidence 412(b)(1)(C) provides that, in a criminal case, a military judge may admit "evidence whose exclusion would violate the constitutional rights of the accused." This is an exception to Military Rule of Evidence 412(a), which provides that, in any proceeding involving alleged sexual misconduct, evidence offered "to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual predisposition" is inadmissible.

enjoin the release of her mental health records.  The NMCCA denied the petition.  Recognizing that Judge Robinson's reliance on the "constitutionally required" test under Military Rule of Evidence 412 was erroneous, the NMCCA nonetheless concluded that there was no "clear and indisputable" error in the crime-fraud ruling.  E.V. next sought a writ of mandamus in the Court of Appeals for the Armed Forces ("CAAF") under the All Writs Act, 28 U.S.C. § 1651.  The CAAF dismissed the petition for lack of jurisdiction, reasoning that it could only exercise its mandamus jurisdiction under the All Writs Act in aid of its pre-existing statutory jurisdiction, and that Congress granted only the NMCCA statutory jurisdiction over a victim's mandamus petition.[3]

## D.

In July 2016, E.V. filed this action in the District Court for the District of Columbia against Judge Robinson in his official capacity as a military judge, seeking injunctive relief.[4]  The complaint alleges three non-constitutional claims: (1) that Judge Robinson's in camera review order violated MRE 513(e)(3); (2) that Judge Robinson's subsequent order to release E.V.'s mental health records violated MRE 513(e)(4); and (3) that Judge Robinson violated E.V.'s right under UCMJ Article 6b to be treated with fairness and with respect for her dignity and privacy. The complaint also alleges two constitutional claims: (1) that Judge Robinson violated E.V.'s Fourth Amendment right to

---

[3] Following the district court's dismissal of this case, the Marine Corps proceeded with the court-martial in March 2017.  Sgt. Martinez was acquitted of all charges.

[4] The complaint also names Sgt. Martinez as an "indispensable party" defendant, but does not allege any claims against him directly.

be secure in her private possessions; and (2) that Judge Robinson unlawfully usurped Article III power by implicitly declaring a statute—here, the repeal of the "constitutionally required" exception in former MRE 513(d)(8)—unconstitutional. E.V. also moved for a temporary restraining order ("TRO") and preliminary injunction prohibiting Judge Robinson from releasing her mental health records—which Judge Robinson had not yet released—and ordering him to destroy any such records in his possession.[5]

Judge Robinson filed a motion to dismiss and a response to E.V.'s request for injunctive relief. The district court did not rule on either motion because it concluded that venue was improper and thus transferred the case to the Eastern District of California, where E.V. resides. *E.V. v. Robinson*, 200 F. Supp. 3d 108, 114 (D.D.C. 2016). Following the transfer, the parties submitted supplemental briefing on the question whether E.V.'s action was barred by the doctrine of sovereign immunity.

The district court granted the motion to dismiss and denied E.V.'s motion for injunctive relief on sovereign immunity grounds. Relying on *Gilbert v. DaGrossa*, 756 F.2d 1455 (9th Cir. 1985), the court concluded that E.V.'s suit against Judge Robinson in his official capacity

---

[5] At various times in the district court and this court, E.V. has asserted that she is seeking a writ of mandamus, although the complaint mentions mandamus only in the paragraph alleging jurisdiction. Consistent with the complaint's prayer for relief, we refer to E.V.'s requested relief as an injunction rather than a writ of mandamus, but our analysis does not depend on this distinction. *See Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013) ("[I]n general, 'the bar of sovereign immunity' applies to mandamus petitions." (quoting *Smith v. Grimm*, 534 F.2d 1346, 1352 n.9 (9th Cir. 1976)).

"constitutes a suit against the United States" for purposes of sovereign immunity. The district court also concluded that Congress did not waive the government's immunity from suit in federal district court when it provided victims a limited right to seek mandamus relief in the military Court of Criminal Appeals. Because the district court resolved the case on sovereign immunity grounds, it declined to address the remaining "equitable jurisdiction" and merits questions.[6]

E.V. timely appealed.[7] "[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *see also Mills v. United States*, 742 F.3d 400, 404 (9th Cir. 2014) (determining the court's subject matter jurisdiction in a sovereign immunity case). Thus, we may

---

[6] Under *Schlesinger v. Councilman*, 420 U.S. 738 (1975), even where a district court has subject matter jurisdiction, it should decline to exercise its "equitable jurisdiction" to "interven[e], by injunction or otherwise, in pending court-martial proceedings" unless a court-martial ruling is "void" as a result of a "fundamental defect." *Id.* at 740, 746–47.

[7] After the district court dismissed the complaint, Judge Robinson released E.V.'s redacted mental health records to the court-martial parties. Judge Robinson thereafter filed a motion to dismiss this appeal as moot. E.V. opposed the motion, arguing, inter alia, that a federal court could still provide her a concrete and real remedy by ordering Judge Robinson to destroy all copies of the mental health records in his possession and to order trial and defense counsel to do likewise. A motions panel of this court denied the motion without prejudice, allowing Judge Robinson to renew the mootness argument in his answering brief. Judge Robinson has not renewed his mootness argument, but we have an independent obligation to consider our subject matter jurisdiction in the face of possible mootness, *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 871 (9th Cir. 2007), and we conclude that this case is not moot, *see Church of Scientology v. United States*, 506 U.S. 9, 13–14 (1992).

properly decide the threshold issue of sovereign immunity without reaching the question whether E.V. has brought a petition for writ of mandamus, 28 U.S.C. § 1361, or whether we have jurisdiction over E.V.'s nonconstitutional claims on some other basis.

## II.

"Suits against the government are barred for lack of subject matter jurisdiction unless the government expressly and unequivocally waives its sovereign immunity." *Mills*, 742 F.3d at 404. Thus, to determine whether the district court has subject matter jurisdiction over E.V.'s claims, we must answer two questions: (1) whether E.V.'s claims are "against the government" for purposes of sovereign immunity, and, if so, (2) whether the government has waived its sovereign immunity over those claims. *Id.*

Reviewing these questions de novo, *see Clinton v. Babbitt*, 180 F.3d 1081, 1086 (9th Cir. 1999), we begin our analysis with the sovereign immunity framework set out in *Larson*, 337 U.S. 682. Contrary to Judge Robinson's arguments, we conclude that *Larson* has not been abrogated in the present context, and that *Larson*'s framework applies in official capacity suits such as this one. We therefore apply the *Larson* framework and conclude that sovereign immunity bars E.V.'s non-constitutional claims because they are "against the government" and the government has not waived its immunity. We further conclude that E.V.'s constitutional claims are not "against the government" and thus not barred by sovereign immunity, *id.* at 688, 701–02, but "[w]e can affirm the district court on any basis supported by the record," *Wood v. City of San Diego*, 678 F.3d 1075, 1086 (9th Cir. 2012), and we affirm the dismissal of these claims on other grounds.

## A.

E.V. argues that her claims against Judge Robinson are not "against the government" for purposes of sovereign immunity in light of the Supreme Court's holding in *Larson*, 337 U.S. 682. As the parties dispute the present applicability and scope of the *Larson* framework, we begin by reviewing *Larson* itself.

In *Larson*, the Court held that sovereign immunity barred a breach of contract suit against the Administrator of the War Assets Administration seeking to enjoin the shipment of coal to third parties. *Id.* at 684–85. The Court explained that "the crucial question is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign." *Id.* at 687. The Court recognized that "[t]here may be, of course, suits for specific relief"—"i.e., the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions"—"against officers of the sovereign which are not suits against the sovereign." *Id.* at 688–89. Those suits, the Court continued, fall into two categories: (1) suits alleging that a federal official acted ultra vires of statutorily delegated authority, and (2) suits alleging that a federal official violated the Constitution.[8] *See id.* at 689–90, 701–02.

---

[8] Courts use a variety of shorthands to refer to this framework, including the "*Larson-Dugan* exception," *Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013), the "*Larson-Malone* test," *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 282 (1983), and the "*Ex parte Young* fiction," *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010). The latter shorthand is confusing because the *Larson* framework is not identical to the *Ex Parte Young* fiction that is commonly invoked in the Eleventh Amendment context.

As for the first category, the *Larson* Court explained:

> [W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief.

*Id.* at 689. The Court then distinguished between suits alleging that a federal official acted in "conflict with the terms of his valid statutory authority," which are considered suits against the individual rather than the government, and suits alleging that a federal official simply made an "incorrect decision as to law or fact," which are against the government and thus barred unless immunity is waived. *Id.* at 695. The Court explained the rationale for the distinction as follows: "relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power. *A claim of error in the exercise of that power is therefore not sufficient.*" *Id.* at 690 (emphasis added).

With regard to the second category—i.e., suits alleging constitutional violations—the Court explained that where "the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional . . . the conduct against which specific relief is sought is beyond the officer's powers and is, therefore, not

*See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Throughout this opinion, we refer to the two categories in *Larson* collectively as the "*Larson* framework" or "*Larson* exceptions."

the conduct of the sovereign." *Id.* In addition, even where a suit does not allege that a statutory delegation of authority is itself unconstitutional, the suit is not "against the sovereign" if it alleges that the official acted in an unconstitutional manner. *See id.* at 691, 701–02. Because the petitioner in *Larson* did not claim (1) that the Administrator had acted beyond "a limitation on [his] delegated power to refuse shipment [of coal] in cases in which he believed the United States was not obliged to deliver," or (2) that the Administrator had acted "unconstitutionally or pursuant to an unconstitutional grant of power," the suit was "against the Government" for purposes of sovereign immunity. *Id.* at 688, 691.

The Court reaffirmed the validity of the *Larson* exceptions in *Malone v. Bowdoin*, 369 U.S. 643, 647 (1962) and, one year later, in *Dugan v. Rank*, 372 U.S. 609, 621–22 (1963). Today, *Dugan* continues to provide the Court's most recent formulation of the *Larson* exceptions: a suit against a federal official for specific relief is not considered to be against the government, and thus is not barred by sovereign immunity, where the plaintiff alleges: "(1) action by officers beyond their statutory powers [or] (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void." 372 U.S. at 621–22 (citing *Malone*, 369 U.S. at 647); *see also, e.g.*, *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam) (applying *Dugan* and concluding that sovereign immunity barred a suit for specific relief against a federal official); *City of Fresno v. California*, 372 U.S. 627, 628–29 (1963) (same).[9]

---

[9] Although 1963 marks the Court's latest application of the *Larson* framework in the context of federal sovereign immunity, the Court has

**B.**

We turn to Judge Robinson's first threshold challenge to the application of the *Larson* framework in this case. Relying on *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010), Judge Robinson argues that Congress abrogated the *Larson* exceptions in their entirety in 1976 by adding an express waiver of sovereign immunity to section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. We conclude that the 1976 amendment superseded the *Larson* exceptions only for suits in which the amendment's waiver provision applies, but did not abrogate the exceptions where the waiver does not apply. And, because the waiver does not apply here, E.V. may invoke the *Larson* exceptions.

We begin with the text of the 1976 amendment to section 702 of the APA. The amendment enacted an express waiver of sovereign immunity by adding the second sentence in current section 702:

> An action in a court of the United States
> seeking relief other than money damages and

---

more recently applied the *Larson* framework in the context of state sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 n.11, 113–17 (1984); *Fla. Dep't of State v. Treasure Salvors, Inc*., 458 U.S. 670, 688–89, 693–97 (1982). Referring to *Larson*'s ultra vires category as "a narrow and questionable exception" to the "general rule that a suit is against the State if the relief will run against it," the Court in *Pennhurst* stated that *Larson*, *Treasure Salvors*, "and other modern cases make clear that a state officer may be said to act *ultra vires* only when he acts without any authority whatever." 465 U.S. at 101–02 n.11. We subsequently relied on *Pennhurst* when discussing the scope of *Larson*'s ultra vires category in the context of federal sovereign immunity in *United States v. Yakima Tribal Court*, 806 F.2d 853, 860 (9th Cir. 1986); *see infra* p. 25.

> stating a claim that an agency or officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States or that the United States is an indispensable party.

Pub. L. No. 94-574, 90 Stat. 2721 (1976) (codified at 5 U.S.C. § 702). As we recognized in a prior case, the House report accompanying the 1976 amendment stated that "the time [has] now come to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer acting in an official capacity." *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989) (quoting H.R. Rep. No. 94-1656, at 9 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6121, 6129). By largely eliminating the federal sovereign immunity defense, Congress intended the new waiver provision to "be a safety-valve to ensure greater fairness and accountability in the administrative machinery of the Government." H.R. Rep. No. 94-1656, at 9. The House report also "referred disapprovingly" to the prevailing sovereign immunity doctrine (including the *Larson* framework), *Presbyterian Church*, 870 F.2d at 525, characterizing it as a source of confusion and an unnecessary drain on judicial resources, *see* H.R. Rep. No. 94-1656, at 5–10. Thus, Congress's "plain intent" was to "eliminate[e] the need to invoke the [*Larson* exceptions]" by expressly waiving the government's sovereign immunity. *Presbyterian Church*, 870 F.2d at 526.

Consistent with this understanding of congressional intent, we subsequently recognized in *Peabody* that "since 1976 federal courts have looked to § 702 . . . to serve the

purposes of the [*Larson* exceptions] in suits against federal officers." 610 F.3d at 1085. In other words, section 702's waiver of sovereign immunity "replaced the [*Larson* exceptions] as the doctrinal basis for a claim for prospective relief." *Id.* (citing *Presbyterian Church*, 870 F.2d at 525–26). In recognizing this doctrinal substitution, however, we did not also conclude that Congress intended to *expand* the government's sovereign immunity by abrogating the *Larson* exceptions in cases not covered by the section 702 waiver.

We similarly decline to reach such a conclusion here. First, neither the text nor the structure of the 1976 amendment to the APA indicates that Congress intended to abrogate the *Larson* exceptions in cases not covered by the section 702 waiver. Although a "precisely drawn, detailed statute pre-empts more general remedies" that would otherwise be available under *Larson*, *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 285 (1983); *State v. Babbitt*, 75 F.3d 449, 452–53 (9th Cir. 1996), a single sentence in section 702 of the APA, even in combination with other APA provisions, does not constitute such a statute. *Cf. Block*, 461 U.S. at 275 n.1, 284–86 (setting out the relevant provisions of the Quiet Title Act of 1972 and holding that it abrogated the *Larson* exceptions in all suits challenging the United States' title to real property).

Nor does the legislative history of the 1976 amendment support Judge Robinson's argument. The House report clearly indicates that Congress intended for the 1976 amendment to supersede the *Larson* exceptions *by eliminating the sovereign immunity defense*, but it does not indicate that Congress also intended to abrogate the *Larson* exceptions by *expanding the sovereign immunity defense*. Indeed, such an abrogation would run directly contrary to Congress's overarching intent in enacting the amendment,

which was to remove the government's sovereign immunity in actions for prospective relief. *See Presbyterian Church*, 870 F.2d at 525–26; H.R. Rep. No. 94-1656, at 1 (stating that the purpose of the amendment is "*to remove* the defense of sovereign immunity as a bar to judicial review of Federal administrative action otherwise subject to judicial review" (emphasis added)). As this legislative history is ambiguous at best, it does not provide a sufficient basis for recognizing the complete abrogation of the *Larson* exceptions. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 569–71 (2005).

In addition, although we have not previously considered the precise argument Judge Robinson raises here, we have consistently applied the *Larson* framework after the 1976 amendment to section 702 where its waiver does not apply. *See Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 648 (9th Cir. 1998); *United States v. Yakima Tribal Court*, 806 F.2d 853, 859–60 (9th Cir. 1986); *Aminoil U.S.A., Inc. v. Cal. State Water Res. Control Bd.*, 674 F.2d 1227, 1233–34 (9th Cir. 1982); *Martinez v. Marshall*, 573 F.2d 555, 560 (9th Cir. 1977); *Starbuck v. City & Cty. of San Francisco*, 556 F.2d 450, 457 n.14 (9th Cir. 1977). And we are not alone in doing so. *See Dotson v. Griesa*, 398 F.3d 156, 177 & n.15 (2d Cir. 2005); *Made in the USA Found. v. United States*, 242 F.3d 1300, 1308–09 n.20 (11th Cir. 2001); *Clark v. Library of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984).[10]  Most recently, in *Mashiri v. Department of Education*, 724 F.3d 1028 (9th Cir. 2013) (per curiam), we

---

[10] We are not aware of any case holding that the *Larson* exceptions have been abrogated in their entirety, although the Fifth and Tenth Circuits have reserved the question. *See Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011); *Wyoming v. United States*, 279 F.3d 1214, 1236 (10th Cir. 2002).

applied the *Larson* framework after citing *Peabody* as a case "discussing *Larson* and *Dugan*." *Id.* at 1032. We decline Judge Robinson's invitation to create tension in our case law needlessly, *see, e.g.*, *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1168–72 (9th Cir. 2017), and instead conclude that our cases applying the *Larson* framework are consistent with section 702's limited replacement of that framework as recognized in *Peabody*.

Finally, because the *Larson* framework does not apply where the waiver of sovereign immunity under section 702 does, we must determine whether that waiver applies here. The scope of the section 702 waiver is expansive—indeed, the waiver applies even where there is not "final agency action" under APA section 704, *Navajo Nation*, 876 F.3d at 1171–72—but it is not unlimited. "[T]he second sentence of § 702 waives sovereign immunity broadly for all causes of action *that meet its terms*." *Id.* (emphasis added). And because "the sentence does refer to a claim against an 'agency' [or officer or employee thereof]," it "waives immunity only when the defendant falls within that category." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 187 (D.C. Cir. 2006).

It is undisputed that Judge Robinson is not an "agency or officer or employee thereof" for purposes of section 702. APA section 701 expressly exempts courts-martial from the definition of "agency," 5 U.S.C. § 701(b)(1)(F), and E.V. seeks relief from Judge Robinson in his official capacity as a military judge of a court-martial. Accordingly, section 702's waiver of sovereign immunity does not apply to Judge Robinson, and so the *Larson* framework has not been abrogated in the present context.

### C.

Judge Robinson raises a second threshold challenge to the application of the *Larson* framework, arguing that a suit is per se against the government for purposes of sovereign immunity where, as here, a federal official is named as a defendant only in his official capacity. We disagree.

Judge Robinson's argument runs directly contrary to *Larson* itself. The plaintiff in *Larson* sued the defendant "because of his official function as chief of the War Assets Administration" and "asked for an injunction against him *in that capacity*." 337 U.S. at 686 (emphasis added). The Court was not concerned with the form of pleading. To the contrary, the Court explained that the suit would not have been barred by sovereign immunity had it alleged that the defendant acted unconstitutionally or ultra vires, because such acts "are *considered* individual and not sovereign actions." *Id.* at 689 (emphasis added). Indeed, the very rationale for the framework set out in *Larson* is that a suit's form should not be exalted over its substance; a suit is barred under the *Larson* framework, "*not because it is a suit against an officer of the Government*, but because it is, *in substance*, a suit against the Government over which the court, in the absence of consent, has no jurisdiction." *Id.* at 688 (emphases added). In short, we would be turning *Larson* on its head if we were to hold that its framework does not apply simply because a defendant is named in his official capacity only.

Judge Robinson's argument also runs counter to our case law and that of our sister circuits. *See, e.g.*, *Martinez*, 573 F.2d at 555, 560 (applying the *Larson* framework to claims against "F. Ray Marshall, successor to John T. Dunlop, Secretary, Department of Labor"); *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (same for claims against

"William J. Clinton, in his official capacity as President of the United States"); *see also Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005) (explaining that the *Larson* framework provides exceptions to the general rule that "sovereign immunity protects . . . officers when [they] act *in their official capacities*" (emphasis added)).**[11]**   Our decision in *Gilbert*, 756 F.2d at 1458–49, relied upon by Judge Robinson, is not to the contrary.  In *Gilbert*, as in the case it cites, *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982), we concluded that suits against federal officials in their official capacities *seeking damages* were ipso facto against the government for purposes of sovereign immunity. Because the *Larson* framework does not apply in suits for damages, *Clark*, 750 F.2d at 104; *Unimex, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 594 F.2d 1060, 1062 (5th Cir. 1979), those decisions were correctly decided, and are inapposite to E.V.'s claims for injunctive relief.  Accordingly, we reject Judge Robinson's second threshold challenge to the application of the *Larson* framework, and proceed to apply the *Larson* framework to the claims in this case.**[12]**

---

**[11]** Congress also apparently understood the *Larson* framework to apply in official capacity suits.  The APA section 702 waiver of sovereign immunity—which, as we have explained, replaced the *Larson* framework where the waiver applies—expressly covers any "claim that an agency or officer or employee thereof acted or failed to act *in an official capacity* or under color of legal authority."  5 U.S.C. § 702 (emphasis added).

**[12]** At oral argument, Judge Robinson also contended (1) that E.V. waived her reliance on the *Larson* framework on appeal by not raising it before the district court; and (2) that footnote 11 of *Larson* bars this suit because the affirmative relief sought would impose an "intolerable burden on governmental functions," *Washington v. Udall*, 417 F.2d 1310, 1311–12, 1317 (9th Cir. 1969) (interpreting *Larson* footnote 11); *see also Vann v. Kempthorne*, 534 F.3d 741, 750–55 (D.C. Cir. 2008)

**D.**

We apply the *Larson* framework to E.V.'s non-constitutional and constitutional claims in turn.

**1.**

**a.**

We begin by considering the scope of *Larson*'s "ultra vires" category for non-constitutional claims, as interpreted by our case law. E.V. argues that under *Mashiri*, 724 F.3d at 1032, we should "merge" our consideration of *Larson*'s ultra vires category with the merits questions, which would effectively allow us to consider the merits of her claims as though they were not barred by sovereign immunity. *Mashiri*, however, is but the latest in a long line of cases in which we have applied the *Larson* framework, and thus we must consider our application of the *Larson* framework in our earlier cases as well. In doing so, we recognize that

---

(discussing at length the "unfortunate footnote in the *Larson* opinion"). We reject both of these arguments. First, E.V. is "not limited to the precise arguments [she] made below," *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013) (internal quotation marks omitted), and it is sufficient for purposes of our review that she litigated the issue of sovereign immunity before the district court, *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) ("[I]t is claims that are deemed waived or forfeited, not arguments.")). Second, whatever the scope of *Larson* footnote 11's "intolerable burden" exception, it is not implicated by ordering relief that would simply require military judges to comply with the Military Rules of Evidence by not releasing privileged evidence or by destroying such evidence once it is released. *Cf. Shermoen v. United States*, 982 F.2d 1312, 1320 (9th Cir. 1992) (concluding that the affirmative relief sought would work an "intolerable burden on governmental functions" for purposes of *Larson* footnote 11 because it would "prevent the absent [Indian] tribes from exercising sovereignty over the reservations allotted to them by Congress").

*Larson*'s line between an ultra vires act and an erroneous exercise of delegated authority is notoriously elusive. *See* H.R. Rep. No. 94-1656, at 4–9; *cf. City of Arlington v. F.C.C.*, 569 U.S. 290, 299 (2013). Therefore, we have eschewed any attempt to decide in general "at what point a violation of a statute or regulation is so inconsistent with the agent's authority that he divests himself of sovereign immunity," *Yakima Tribal Court*, 806 F.2d at 860, and instead we have applied *Larson*'s ultra vires category on a case-by-case basis.

Our early cases following the Supreme Court's 1963 decision in *Dugan* frequently concluded that claims alleged ultra vires action, and therefore were not "against the government" for purposes of sovereign immunity. In *Washington v. Udall*, for example, the State of Washington alleged that the Secretary of the Interior and his subordinates violated a contractual duty to deliver water to 160 acres of land based on an erroneous interpretation of a statute. 417 F.2d 1310, 1311–12, 1317 (9th Cir. 1969). We concluded that the suit was one alleging ultra vires action under *Larson* because Congress did not "grant[] to the Secretary of the Interior, in his executing of contracts for the delivery of irrigation water, the discretionary authority to make incorrect as well as correct decisions concerning the necessity for the inclusion of 160-acre limitations in the contracts." *Id.* at 1316. We also concluded that the ultra vires exception was satisfied in *Rockbridge v. Lincoln*, where the plaintiffs alleged that the Secretary of the Interior and other officials erroneously failed to promulgate and enforce rules governing trading on Indian lands. 449 F.2d 567, 568, 572–73 (9th Cir. 1971). In general, other cases from this era similarly classified plaintiffs' claims as falling within *Larson*'s ultra vires category. *See Martinez*, 573 F.2d at 560; *Starbuck*, 556 F.2d at 457 n.14; *Andros v. Rupp*,

433 F.2d 70, 72–74 (9th Cir. 1970). *But see Turner v. Kings River Conservation Dist.*, 360 F.2d 184, 189–92 (9th Cir. 1966).

The 1980s, however, marked a shift in our case law addressing *Larson*'s ultra vires category. In *Aminoil*, the plaintiff argued that the Administrator of the Environmental Protection Agency acted ultra vires of his delegated authority by erroneously designating property as "wetlands" subject to the Clean Water Act. 674 F.2d at 1233–34. We concluded that *Larson* "clearly rejected this argument" because, under *Larson*, a "simple mistake of fact or law does not necessarily mean that an officer of the government has exceeded the scope of his authority." *Id.* at 1234. Four years later, we relied on *Aminoil* and *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101 n.11, 112 n.22 (1984), to conclude that a federal project engineer "clearly . . . had authority to relocate irrigation canals to better serve" an Indian tribe, and so was immune from a suit alleging that he "violated [federal] statutes and regulations regarding owner consent to right-of-way changes" when doing so. *Yakima Tribal Court*, 806 F.2d at 859–60. This trend continued in *Tucson Airport Authority*, where we held that the Secretaries of Defense and the Air Force were immune from a suit alleging that they violated a contractual duty to defend the plaintiff in civil actions; such a suit "allege[d], at most, a mistake of law" rather than ultra vires action. 136 F.3d at 648 (citing *Aminoil*, 674 F.2d at 1234); *cf. also Ramon by Ramon v. Soto*, 916 F.2d 1377, 1383 & n.7 (9th Cir. 1989) (relying on *Yakima Tribal Court*, 806 F.2d at 859–60, and *Pennhurst*, 465 U.S. at 101 n.11, to conclude that plaintiffs' claims were "against the United States" for purposes of the Equal Access to Justice Act).

Most recently, in *Mashiri*, we employed a different analysis that more closely resembled our earlier cases. The plaintiff there sought mandamus relief against the Secretary of Education, alleging that the Secretary violated a clear nondiscretionary duty under federal statutes to issue him a Stafford Loan. 724 F.3d at 1030–31. Following the D.C. Circuit's analysis in *Washington Legal Foundation v. U.S. Sentencing Commission*, 89 F.3d 897 (D.C. Cir. 1996), we concluded that the ultra vires question under *Larson* "merge[d] with the question on the merits" because the "merits question[] w[as] directly relevant to the government's asserted 'duty to the plaintiff.'" *Id.* at 1032 (first alteration in original) (quoting *Wash. Legal Found.*, 89 F.3d at 901–02). We thus addressed the merits of the mandamus claim and concluded that the Secretary of Education did not owe the plaintiff a clear nondiscretionary duty to issue him a Stafford Loan. *Id.* at 1032–33. Accordingly, the plaintiff could neither satisfy *Larson*'s ultra vires category nor prevail on the merits. *Id.*

**b.**

We consider the foregoing precedents as guideposts, but in this case-specific area of the law, we are guided first and foremost by *Larson* itself. And, we conclude, *Larson* clearly dictates that E.V.'s non-constitutional claims allege "error[s] in the exercise of [delegated] power" rather than a "lack of delegated power." *Larson*, 337 U.S. at 695. In this regard, E.V.'s non-constitutional claims are more akin to those alleged in *Aminoil* and its progeny than the claims in *Mashiri*. Accordingly, E.V.'s non-constitutional claims are "against the government" for purposes of sovereign immunity, and thus are barred unless such immunity has been waived.

E.V.'s non-constitutional claims allege (1) that Judge Robinson's decision to conduct an in camera review of her mental health records did not comply with the conditions set out in MRE 513(e)(3); (2) that Judge Robinson's subsequent decision to release the records under a protective order did not comply with the conditions required by MRE 513(e)(4); and (3) that, by deciding to release the records, Judge Robinson failed to treat E.V. with fairness or respect for her dignity and privacy, in violation of UCMJ Article 6b. Although these claims may constitute "[s]erious challenges to the propriety" of Judge Robinson's evidentiary rulings, *Robinson*, 200 F. Supp. 3d at 114, we conclude that Judge Robinson's rulings were within the scope of his properly delegated authority under UCMJ Article 26, 10 U.S.C. § 826.

Judge Robinson's evidentiary rulings, no less than the challenged evidentiary rulings of district judges, were not "beyond his authority." *Larson*, 337 U.S. at 702. For purposes of sovereign immunity, Judge Robinson possesses the "discretionary authority to make incorrect as well as correct decisions concerning" the discovery of evidence in a court-martial. *Udall*, 417 F.2d at 1316; *see also Larson*, 337 U.S. at 695 (rejecting the argument that "an officer given the power to make decisions is only given the power to make correct decisions"). Just as "the jurisdiction of a court to decide a case does not disappear if its decision on the merits is wrong," *Larson*, 337 U.S. at 695, a military judge's delegated authority does not disappear if his evidentiary decision on the merits is wrong. In sum, E.V. alleges "simple mistake[s] of fact or law," *Yakima Tribal Court*, 806 F.2d at 859 (quoting *Aminoil*, 674 F.2d at 1234), rather than actions in "conflict with the terms of" Judge Robinson's delegated authority to resolve evidentiary issues when presiding over a court-martial, *Larson*, 337 U.S. at

695; *Yakima Tribal Court*, 806 F.2d at 859 (quoting *Aminoil*, 674 F.2d at 1234). Were we to hold otherwise, we would be expanding *Larson*'s ultra vires exception to the point of abrogating the sovereign immunity defense for military judges entirely, in conflict with *Larson* and its progeny. Accordingly, E.V.'s non-constitutional claims are "against the government," and thus are barred by sovereign immunity unless such immunity has been waived. We therefore turn to the question of waiver.

**c.**

E.V. argues that Congress waived the government's sovereign immunity in federal court through UCMJ Article 6b(e), which provides:

> If the victim of an offense under this chapter believes that . . . a court-martial ruling violates the rights of the victim afforded by[, inter alia, MRE 513 relating to the psychotherapist-patient privilege], the victim may petition the Court of Criminal Appeals for a writ of mandamus to require . . . the court-martial to comply with the section (article) or rule.

10 U.S.C. § 806b(e). We conclude that Article 6b(e) provides only a limited waiver of sovereign immunity to allow victims to petition for mandamus relief in the military Court of Criminal Appeals, not a general waiver that applies in Article III courts.

"The waiver of the United States' sovereign immunity must be unequivocally expressed in the statutory text and will not be implied." *Dep't of Treasury-I.R.S. v. Fed. Labor Relations Auth.*, 521 F.3d 1148, 1153 (9th Cir. 2008).

"Furthermore, 'a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Id.* (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Here, the text of Article 6b(e) "strictly construed . . . in favor of the sovereign," *id.* (quoting *Lane*, 518 U.S. at 192), does not mention, let alone "unequivocally express[]," a waiver of sovereign immunity in an Article III court, *Dep't of Treasury-I.R.S.*, 521 F.3d at 1153; *see also, e.g.*, *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 927 (9th Cir. 2009) (explaining that the Tucker Act waives the government's sovereign immunity in the Court of Federal Claims for claims arising under the statute in excess of $10,000, but does not also waive sovereign immunity where such claims are brought in federal district court). Thus, the government has not waived its sovereign immunity over E.V.'s non-constitutional claims in an Article III court. Because E.V.'s non-constitutional claims are against the government and the government has not waived its immunity over such claims, sovereign immunity bars them.

## 2.

Unlike her non-constitutional claims, E.V.'s two constitutional claims are not "against the government" for purposes of sovereign immunity. *See Larson*, 337 U.S. at 689–90, 701–02; *Yakima Tribal Court*, 806 F.2d at 859 (contrasting *Larson*'s ultra vires category with the "per se divestiture of sovereign immunity" for alleged constitutional violations); *see also Pollack v. Hogan*, 703 F.3d 117, 121 (D.C. Cir. 2012) (explaining that whether a plaintiff has asserted a cognizable constitutional right, "and whether any such right is applicable to [the] case, goes to the merits of [the plaintiff's claim] and not to . . . sovereign immunity"). Nonetheless, we affirm the dismissal of these claims on other grounds. *See Wood*, 678 F.3d at 1086.

**a.**

E.V.'s first constitutional claim alleges that Judge Robinson violated the Fourth Amendment.  The allegations in the complaint supporting this claim incorporate by reference the preceding allegations, recite the text of the Fourth Amendment, and allege that Judge Robinson "violated E.V.'s right under the Fourth Amendment of the Constitution to be secure in her person, house, papers, and effects, against unreasonable searches and seizures by the government."  Assuming arguendo that E.V. has a cognizable Fourth Amendment interest in her mental health records, these conclusory allegations are insufficient to state a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *cf. also, e.g.*, *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017) ("Whatever the standard governing the Second Amendment protection accorded the acquisition of firearms, these vague allegations cannot possibly state a claim for relief under the Second Amendment." (footnote omitted)).  Thus, we affirm the dismissal of E.V.'s Fourth Amendment allegations because they fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See Wood*, 678 F.3d at 1086; *see also Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (addressing whether petitioners' allegations stated a claim because "a remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion")).

**b.**

E.V.'s second and final constitutional claim alleges that Judge Robinson "unlawfully usurped" Article III judicial power.  In particular, the complaint points to Judge Robinson's "declar[ation] that disclosure of E.V.'s psychotherapy records was 'constitutionally required,'"

even though the "constitutionally required" exception in former MRE 513(d)(8) had been repealed by the National Defense Authorization Act for Fiscal Year 2015 ("NDAA 2015") and Executive Order No. 13,696. "By reinserting the 'constitutionally required' exception into Mil. R. Evid. 513," E.V. alleges, "Judge Robinson implicitly declared NDAA 2015 and Exec. Order 136696 unconstitutional," thereby "usurp[ing] power that the Constitution explicitly reserves for Article III courts."

In light of our affirmance of the dismissal of E.V.'s other claims, E.V. is unable to establish the redressability element of standing through this claim alone. Even if Judge Robinson's reliance on the "constitutionally required" exception was erroneous, he independently relied on the "crime-fraud" exception in MRE 513(d)(5) to order the release of E.V.'s mental health records. And, as we have explained, E.V.'s allegations challenging Judge Robinson's application of the crime-fraud exception are barred by sovereign immunity. Because Judge Robinson's "crime-fraud" ruling provides an independent basis for his decision to release E.V.'s mental health records and sovereign immunity bars any challenge to that ruling, there is no basis on which the district court could grant her any relief on this claim. *See Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 895 (9th Cir. 2007). Accordingly, E.V. cannot establish standing to assert her second constitutional claim alone, and thus we affirm the dismissal of this claim for lack of subject matter jurisdiction.

## III.

In sum, we hold as follows: (1) the 1976 amendment to section 702 of the APA did not abrogate the *Larson* framework in suits where section 702's waiver of sovereign immunity does not apply; (2) under *Larson*, suits for specific

relief that are pleaded against federal officials in their official capacities are not per se barred by sovereign immunity; (3) E.V.'s non-constitutional claims are barred by sovereign immunity because they do not allege ultra vires action for purposes of the *Larson* framework, and the government has not waived its sovereign immunity over such claims; (4) E.V.'s Fourth Amendment allegations are not "against the government" under *Larson* and thus are not barred by sovereign immunity, but such allegations fail to state a claim under Rule 12(b)(6); and (5) E.V.'s constitutional claim challenging Judge Robinson's reliance on the "constitutionally required" evidentiary exception is similarly not barred by sovereign immunity, but fails for lack of redressability.

**AFFIRMED.**